at all. This appeal asks the court to assess qualified immunity case law involving individuals who are specialized services, health care, in a county jail where they are embedded in a public facility working in close proximity and closely supervised by county employees. The court below acknowledged that the law in this area is unclear and in its judgment felt that the case fell somewhere between Richardson v. McKnight, the 1997 decision of the United States Supreme Court concerning the private contracting of jail facilities in Tennessee, and this court's 1992 decision in Frazier v. Bailey, in which it held that social service workers were performing public functions and entitled to qualified immunity. The facts here for purposes of qualified immunity, at least the initial assessment of the doctrine, are worth noting. Corison, the employer, has a contract with Cumberland County Jail. Let me suggest that you assume we're familiar with the facts. You've only got 10 minutes on the relationship here. Talking about the facts generally, about what happened in the jail to the plaintiff's decedent here, are you asking us to assume that the facts are as the evidence and all reasonable inferences show them in the best light to the plaintiff and then make a judgment as to whether that's sufficient, or are you asking us to challenge in any respect any of those facts as supported by the plaintiff's evidence? With respect to, I guess Your Honor, I see two sets of facts. One is the global events that occurred from December 1 through December 12, 2008. The other are discrete facts concerning the nature of the contract and the relationship between Cumberland County and the employees and the private contractor. Under the standards applied by this court, I can't ask you to dispute the global facts, and I don't think the facts with respect to the contract, the responsibilities under it, and how those affect these three individual employees are subject to dispute. And it's those facts that I only wanted to highlight. But you're not even going to get to those facts unless what you talk about as the global facts would be sufficient. Assuming, arguendo, that your clients might be entitled to qualified immunity as a theoretical matter, whether those facts are sufficient to show, taken in the light most favorable to the plaintiff, are enough to show, to permit a reasonable jury to find deliberate indifference, a breach of the constitutional standard. And so my question to you is, if you concede that we must take the raw facts, what happened on the ground between December 1 and December 12, in the light most favorable to the plaintiff, and draw all reasonable inferences in favor of the plaintiff, why wouldn't that be enough to show deliberate indifference, regardless of whether your clients were Horizon employees or were unqualifiedly state actors? Were mental health professionals employed directly by the county or by the state of Maine or by some governmental body? The question that you asked, Judge Selye, triggers at least the second part of our appeal. The first part, of course, is the, is this a case of qualified immunity? The second part asks the court to look at the totality of facts and what the district court found, and note that there was no finding concerning particular elements of law being clearly established, as opposed to the broad deliberate indifference. Let's take Walsh. All right. Why do you say the facts regarding Walsh, viewed in the light most favorable to the plaintiff's, don't make out a basis on which a jury could find she was deliberately indifferent to the Glamkos' situation? In connection with the Director of Nursing, Barbara Walsh, what I'm asking the court to acknowledge is that with respect to her limited role in this, the placement in the restraint chair on December 10, the fact that she did only a walk-by assessment, and the fact that she was engaged in providing medication on December 10, those facts don't establish a clearly established violation of a constitutional right here. Does the record support an inference that she made a decision not to send the fellow back to Maine Medical Center because she was just concerned about costs? No, I think that's an unfair characterization of the inferences below. So could a jury draw an inference from those discussions and from the ultimate decision, which was not to send him back to Maine Medical Center, that that was her true motivation? The record in this case establishes that he wasn't sent back to Maine Medical Center on December 8 because an assessment was done and it was deemed medically unnecessary to send him at that time. An assessment was done by whom? The assessment was done by a nurse, Hope Gordon, whose assessment did not appear in the medical records, but whose assessment was part of the record. I thought part of the claim here was the fact that your defendants never called the doctor at that point, for a man who subsequently was found to have very grievous injuries which had not been properly diagnosed. Your Honor, those injuries were diagnosed at Maine Medical Center on December 10 and 11, and he was released back to the jail in spite of those injuries. Does that excuse the fact that they weren't timely and properly diagnosed in the first place? I think it sheds light on the extent of the injuries, Your Honor, and the fact that he went into the hospital and didn't need to be treated beyond an 18-hour period. And again, the focus on the second part of the appeal is what clearly established right is being violated if medical providers are making judgments which they're entitled to do under the deliberate indifference standard? What about the decision to neither give him the particular alternative drug he was asking for, nor to forcibly medicate him with respect to the drug that the jail employees believed would be effective? I think we suggested to the court just briefly that with respect to Seroquel as opposed to Zeprexa, he has no constitutional right that we've been able to find to select his own medication while in the jail. But by the same token, your clients have no right to switch the medication on him simply because they have access to free samples of one medication and it would be an expense to provide him a different medication. That's the allegation, and there's some evidence to support it. I'm not saying it's a fact, but it's precisely the sort of fact that creates an issue that would prevent this interlocutory appeal from going forward. Full circle, Your Honor, the Zeprexa and yours, the free samples, and yours to the benefit of the government entity here, Cumberland County. But now you're on the first issue. But not to the patient. He was on the Zeprexa when he came to the jail, wasn't he? That's right. So they kept him on it. They kept him on it. I mean, medical center. But then he said he didn't want it anymore and he wanted the other. And at that point they made a decision, neither the other nor forcibly Zeprexa. That's right. And how do you justify that decision to neither switch him to the alternative drug that he was asking for, which was different than what he'd been taking right before he came in, not give him that option, nor require him to take the Zeprexa? Two days after Trueworthy made the decision to stop delivery of medication that he wasn't accepting, he did receive an alternative medication, too, Abilify and Geodone. Let me ask Chief Judge Lynch if she has any questions of you. No. Thank you. Thank you. Good morning, police court. My name is Eric Maynard. I'm Hawkson, Maynard in Bangor, Maine. I'm here on behalf of the estate of Victor Galambos. First, I'd like to correct just a misconception, Your Honor. When Victor Galambos entered the jail, he was on Haldol and Seroquel, not Zeprexa. Zeprexa was subsequently described. That was the one that was free. Seroquel was on the Cumberland County Jail's formulary. Your Honor, we believe there are three reasons why the court should deny the appeal in this case. And the first one is the defendants are entitled to an interlocutory appeal on the issue of qualified immunity only if it's a question of law. If it's a question of fact, then the courts have held previously, this court and the Supreme Court, has held that the interlocutory appeal does not lie. What happened in this particular case was the magistrate judge in a recommended decision and Judge Torrenson in her decision said, look, we don't think qualified immunity applies. We're going to do the Richardson v. McNight analysis in light of Palarski and Delia. And so we don't think that these defendants are entitled to qualified immunity under that analysis. However, even if they are, there are factual questions which preclude them from being able to succeed on summary judgment at this level of the proceeding. So take Williams, for example. What factual issue is there that's being debated on this appeal regarding Williams? As far as from our perspective, what are the facts that led to the issue of deliberate indifference? Well, yeah, as I see it on the key events that Williams did, there's a stipulation, a joint statement of facts, isn't there? There is a joint statement of facts, yeah. Okay. And so what's not in that joint statement of facts that is being disputed by the parties that's at all relevant to this appeal? I guess I'm not understanding your question. In light of the issue? Sure. On Williams' behavior, I'm looking at a stipulated set of facts. Right. And you're saying, though, there's incorrectly so that we're not going to decide a fact issue on this appeal. In fact, we don't even do that on interlocutory appeals, much less final ones. But my question, if it was on Williams, in order to decide whether Williams was ineffectual or indifferent, what fact is there that's being disputed other than the ultimate legal conclusion? I don't think there is a fact that's being disputed. I don't know what they've said as far as whether they think there's a difference in the facts. I know what the magistrate judge said, and she very clearly outlined, the number of different issues that she identified where she felt Williams fell short. Okay. And take those. Williams, as I understand it, she decided to transfer, to try to transfer the fellow to Riverview. She started the process, was told it was going to take several months, then inquired further to find out there was another process, started to implicate that process, called the attorney, the state's attorney, and then actually called the incarcerated individual's attorney. So it doesn't sound like she's indifferent based on those stipulated facts. Well, what the facts that the court concluded was that Williams was the closest thing to a counselor or an advocate that he had in prison. She knew he was regressing into psychosis because of an irrational refusal to take medication. She agreed with the failure to intervene to force medication. She agreed that there was a need neither to force medication nor an emergency transfer for psychiatric treatment prior to his jump from the table on December 8th. She agreed that the December 8th jump from the table deserved an emergency response by both physical and mental health practitioners, that the December 8th jump demonstrated a need to change the permissive approach to the refusal to take medication. In short, there's a whole litany of things that Williams should have done that the magistrate judge identified as factual issues that she did not do that would be a question for a jury. Yes, but let me stay with that because that makes a compelling medical malpractice case. But when you have a person running around doing all these things, a whole series of things, trying to help the individual, and your only claim is that she should have been doing other things and she picked the wrong things and she wasn't doing them effectually enough, what precedent is there for us finding that that's a deliberate indifference to the plight of the individual? I think, and I'm trying to remember the case, but I think that there is a case law theory, Your Honor, that says a wanton failure to take action when action is necessary is deliberate indifference. Yes, that's if you take no action. You're indifferent. You don't care. That's what the Eighth Amendment is about. But when you do care and you're running around and doing stuff, how do you turn that into indifference? That's my problem on that. Your Honor, I guess I would say that when you look at, and I go back to the standard in Brennan and Leavitt, and you look at that she was subjectively aware that something needed to be done, that something different than what she was doing needed to be done, and failed to do that, that's the deliberate indifference. Okay. I have a little different question about the same thing. When I selectively read portions of the district court record and the briefs, I came away with the impression that this case was argued on qualified immunity in the district court in a collective sense, that neither the plaintiff nor the defendants, nor the judge, made separate analyses of each individual but decided collectively whether these three defendants were or were not to be given qualified immunity. No, actually it was argued separately. Each defendant came up and we argued ten minutes on one. We spent an hour in the district court going over each one of the defendants. Do you have a case where you've got a prison official doing lots of stuff trying to get, in fact, the best possible result for this guy would have been a transfer to Riverview right away on an expedited basis? Correct. She's repeatedly trying to do that, even going to the point of calling counsel on both sides. So do you have a case where someone's trying to do a whole bunch of stuff, but they've picked the wrong stuff to do, and that's indifference? I don't think that that rises to the level of indifference. I think that the issue that you're talking about is saying, okay, if you're trying to do the right thing and you don't do the right thing. No, trying to do the wrong thing. Your goal is right. Okay. She's clearly focused on trying to help the guy, and she's picked transfer to Riverview and is actively on a repeatedly each day trying to expedite that. No, she's not repeatedly trying to expedite that, Your Honor. That's the issue, that she's not repeatedly trying to expedite that. If she had, I think it would have been a different case. But that's not the case in this particular case. So you think exploring one application, finding out that there's another way to do it, starting the other way, then calling for advice to the attorney, and then calling his attorney to ask if he could file something that would expedite it. That's not trying to do it. I think when you have someone who jumps off the table and severely injures themselves, and that you've seen them regress, and I think you actually look at, when you start with September 12, the psychiatric nurse practitioner saying, this individual is psychotic and has antisocial behavior and his prognosis is poor without medication, and you get to the point in December where that individual stabbed themselves in the neck and they're continuing to regress, and you don't take immediate, you're told, okay, you can do an involuntary commitment and that will get that individual the help they need. And you go, when I get around to it, I'll get around to it. And that's the problem with Williams' behavior in that setting. The second reason we haven't even really discussed is whether or not they're even entitled to qualify under Richardson v. McKnight and Falarsky v. Delia. And our impression is that both under Richardson v. McKnight, and Falarsky as it picks up Richardson, that they're not, that they don't meet the two tests under Richardson v. McKnight. The only reason that the lower court said there was an issue was they said, look, Frazier is still out there. We don't think Frazier's good law, Frazier v. Bailey, which was a social work case, that the social worker had a statutory duty to do certain things and didn't. We don't think that's necessarily good law. But until the First Circuit tells us otherwise, we're going to have to assume that it continues to be good law. But from our perspective, Richardson v. McKnight and the case in Falarsky are controlling, and these horizon defendants, these individual defendants, don't meet the standards, the two tests under those standards. There's not a common law tradition of immunity, nor is there a special policy consideration that is applicable to these particular defendants, and therefore they shouldn't be entitled to qualified immunity. Let me ask whether Chief Judge Lynch has any questions. No. Is the record here, counsel, were the expenses, were all the expenses of the medical operation being passed through under the contract to the counties, to the county? I don't know whether the expenses were being passed through, but they were certainly part of the analysis that the county does every time it hires on. In fact, that was one of the issues that I wanted to raise because there was a question about Nurse Walsh, and what Nurse Walsh had said specifically was that fear of losing one's license wasn't a good enough reason. One's nursing license, they had a group meeting, and one of the nurses said, you know, I'm worried if we don't start sending people out who have these kind of injuries, we're going to be in trouble. We're going to lose our license. And she said, fear of losing one's license isn't a good enough reason for a send-out. And, in fact, they had meetings about cost-cutting measures, not sending patients out, about not incurring costs. Now, whether those were passed directly through the county, I don't believe so. I believe it was a contract that says, okay, we're going to have to get this paid next year, and I don't know that. I actually don't know that, Your Honor, as to whether or not they were passed through. I do not know that, and I hesitate to say. Thank you. Thank you. Just briefly, Your Honor, if I may go to Judge Kayada's point, the pass-through, that would be in the appendix, page 207, the plaintiff submitting to that fact in a statement of material fact. It admitted that the expenses are passed through? Yes, Your Honor. Yes. And to what extent did your client, or rather the county, supervise the vendor here? The plaintiff pointed out that they did make independent judgments on medical and mental health issues, but the county had their own consultant, and there were requirements, monthly requirements, to provide a certain number of metrics, including financial, that were the subject of periodic meetings. So the county, because it was ultimately responsible for all the expenses and committed only to the extent of their budget, was watching it closely. And, of course, they approved? What do you mean committed only to the extent of its budget? If expenses were passed through that exceeded the budget, the county wouldn't pay them? I don't know that that ever came up, Your Honor. What did you mean by the statement that the county was committed only to the extent of its budget? That that was part of the contract, that the county was, and that's the language. There was no explication of that in the record. So there was some economic pressure on Corizon to keep the expenses within the budget that the county had set? Certainly, Corizon was working for a management fee, and the county's effort was to keep its expenses as low as possible, yes. Let me ask Chief Judge Lynch if she has any questions. No, no questions. Thank you. Thank you. Is Attorney Patrick Bedard present? Yes. Thank you.